BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
ROGER A. HSIEH (Cal. Bar No. 294195)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0600
     Facsimile: (213) 894-6265
     E-mail: Roger.Hsieh@usdoj.gov

NIALL M. O'DONNELL
Assistant Chief
SIOBHAN M. NAMAZI
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
     300 N. Los Angeles Street, Suite 2001
     Los Angeles, California 90012
     Telephone: (202) 257-3295
               (202) 839-2589
     Facsimile: (202) 428-6950
     E-mail: Niall.Odonnell@usdoj.gov
             Siobhan.Namazi@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:25-MJ-3689 |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPLICATION FOR RECONSIDERATION OF COURT'S ORDER OF DETENTION; EXHIBIT |
| v. | |
| PAUL RICHARD RANDALL, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Roger A. Hsieh, and

Department of Justice Assistant Chief Niall M. O'Donnell and Trial Attorney Siobhan M. Namazi, hereby submits its Memorandum of Points and Authorities in opposition to defendant PAUL RICHARD RANDALL's Application for Reconsideration of the Court's Order of Detention.

The government's opposition is based on the Memorandum of Points and Authorities contained herein, the files and records of this case, as well as any other evidence or argument that the Court may wish to consider at the hearing on this request.

Dated: July 8, 2025                    Respectfully submitted,

                                       BILAL A. ESSAYLI
                                       United States Attorney

                                       CHRISTINA T. SHAY
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                              /s/
                                       ROGER A. HSIEH
                                       Assistant United States Attorney

                                       NIALL M. O'DONNELL
                                       Assistant Chief
                                       SIOBHAN M. NAMAZI
                                       Trial Attorney
                                       Department of Justice

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

**Table of Contents**

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I. INTRODUCTION........................................................1

II. FACTUAL BACKGROUND.................................................2

    A. Defendant's Prior Criminal Conduct.........................2

    B. RANDALL Uses Fraud Proceeds to Purchase the Proposed Property in Orange, California as well as Millions of Dollars in Other Assets...................................3

    C. The Government is Informed Defendant Would Return to White Memorial Hospital and Then a Facility in Pacoima, California if Discharged.........................5

III. ARGUMENT..........................................................5

    A. The Court Properly Held That the Government Was Entitled to A Detention Hearing............................5

    B. The Proposed Additional $40,000 Unsecured Bond and Additional Medical Information Do Not Mitigate Defendant's Significant Danger to the Community...........8

    C. Defendant Has Failed to Make a Due Process Claim, and He Should Not Be Released Under 18 U.S.C. § 3142(i).......9

IV. CONCLUSION.......................................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

After sustaining at least five convictions for fraud, serving four different custodial sentences, and while awaiting trial for tax evasion related to another health care fraud kickback scheme, defendant PAUL RICHARD RANDALL ("defendant" or "RANDALL") engaged in a brazen $270 million Medi-Cal fraud and kickback scheme.  At his initial appearance, RANDALL argued for release on a $100,000 unsecured bond signed by his son and then proposed putting up property in Orange, California, as a secured bond.  The Court properly detained RANDALL based on the significant danger he poses to community.

RANDALL now moves for reconsideration by proposing an additional $40,000 unsecured bond and points to medical conditions.  RANDALL proposes using the same property that he offered at his initial appearance: property purchased with funds from RANDALL's current $270 million Medi-Cal fraud scheme and put in the name of SoCal Trust, the same entity RANDALL used to launder the proceeds of his -- at least -- <u>third</u> consecutive health care fraud scheme.  The additional proposed $40,0000 unsecured bond does nothing to mitigate RANDALL's significant danger to the community.  His citation to additional medical conditions also does not mitigate his danger to the community -- financial crimes that he can easily commit through others as he has done in the past with a telephone or computer.  RANDALL also fails to provide new evidence that overcomes the Court's finding that the government met the low threshold to entitle it to a detention hearing.  RANDALL has not met his burden of raising new information that was not previously considered by this Court warranting release

for a serial offender, and the Court should deny his motion for reconsideration.

**II.   FACTUAL BACKGROUND**

    **A.   Defendant's Prior Criminal Conduct**

The government described RANDALL's significant criminal history spanning more than three decades in its motion for detention filed on June 27, 2025, and reattaches its motion here.  (See Exhibit 1.)

In 2012, RANDALL was convicted of his first fraud and kickback scheme in this District based on his paying kickbacks to chiropractors and physicians to refer workers' compensation patients for spinal surgeries and on his creating invoices falsely inflating the cost of spinal surgery hardware to be used in the surgeries, which were then billed to the workers' compensation insurance carriers.  See United States v. Paul Randall, 8:12-cr-0023-JLS, Dkt. 4.  RANDALL pleaded guilty to conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371.  Id.  His conduct was part of the larger Pacific Hospital kickback scheme, which billed nearly $580 million over eight years, about $72.5 million a year.  See https://www.justice.gov/usao-cdca/pr/five-people-including-two-doctors-charged-kickback-schemes-involving-nearly-600-million.

While on supervised release for his 2012 conviction, RANDALL committed tax fraud in this District through a prescription referral business and was later charged with three counts of tax evasion. United States v. Paul Randall, 2:20-cr-0031.  Specifically, defendant, while on release for his prior conviction and despite his prior conviction for mail fraud conspiracy, defendant agreed to refer patients to providers in exchange for providers' writing prescriptions for "expensive and medically unnecessary compound

2

drugs" reimbursed by health insurers. Id., Dkt. 37. RANDALL then agreed that he would be paid 50% of net reimbursements to the pharmacy paid by insurers for the prescriptions RANDALL obtained for them. Id. RANDALL then had the pharmacy write the kickback checks payable to persons RANDALL specified -- including one of RANDALL's lawyers in the Pacific Hospital case -- without those individuals' knowledge; RANDALL then cashed the checks, forging the individuals' signatures, and avoided reporting on that income. Id. RANDALL was then pleaded guilty to one count of tax evasion in violation of 26 U.S.C. § 7201, and was sentenced to 23 months in custody. Id., Dkt. 84.

Despite having had has bail revoked in 2017 for violating his release conditions while awaiting sentencing in a health care kickback case and a separate indictment returned in 2020 for tax evasion from a separate health care fraud and kickback scheme, RANDALL again flouted the terms of his release by engaging in the instant conduct. Around the time RANDALL pleaded guilty in April 2022 for his tax evasion related to his second health care fraud and kickback scheme, he engaged in a $270 million scheme to defraud Medi-Cal from May 2022 through April 2023 as detailed in the complaint affidavit.

**B.  RANDALL Uses Fraud Proceeds to Purchase the Proposed Property in Orange, California as well as Millions of Dollars in Other Assets**

RANDALL used fraudulent proceeds to acquire the property on E. Grovewood in Orange, California, at auction in September 2023, through SoCal Trust and using approximately $3.4 million in funds associated with the Medi-Cal fraud proceeds. The trustee listed on

3

the property through SoCal Trust was K.J., the same individual as alleged in the affidavit that was used to launder the fraud proceeds at defendant's direction.

The same attorney that RANDALL used in the fraud scheme as alleged in the affidavit then setup another entity, Frample Family LLC.  The deed to the property was then transferred from SoCal Trust to Frample Family LLC.  RANDALL now proposes a surety by Mark Randall.  In October 2023, Mark Randall opened a bank account in the name of Frample Family LLC at Wells Fargo Bank.  Further, RANDALL's phone at the time of his most recent arrest was also in the name of Mark Randall.  At the time that the government executed a search warrant at the E. Grovewood property in November 2023, RANDALL's vehicle, a 2018 black Tesla with license plate 8VFE450, which defendant was captured on surveillance driving on several occasions, was registered under the name of Mark Randall.  During execution of the search warrant at the E. Grovewood property, law enforcement recovered from the Tesla evidence of the Medi-Cal fraud scheme, as well as access devices under the name of "Richard P. Randall" and K. J.[1]

RANDALL also used the Medi-Cal fraud proceeds to purchase millions of dollars in other assets[2], including the following:

---

[1] Per the terms of his supervised release conditions, RANDALL was prohibited from possessing access devices in another individual's name.

[2] As the government noted at the last bond hearing, it reserves the right to request a Nebbia hearing as to any assets offered by RANDALL in support of a bond package.

4

- 2020 Mercedes AMG purchased with more than $100,000 in fraud proceeds from a SoCal Trust account and titled in Mark Randall's name
- Seven real properties purchased using Medi-Cal fraud scheme proceeds valued at more than $10 million
- $1.8 million in sports memorabilia purchased using Medi-Cal fraud proceeds

Notably, defendant did not report any of the above assets to Probation as reflected in the Pretrial Services Report dated June 27, 2025.

In March and April of 2024, one of the SoCal Trust accounts used to effectuate the Medi-Cal fraud effectuated large transactions to Frample Family LLC.

### C. The Government is Informed Defendant Would Return to White Memorial Hospital and Then a Facility in Pacoima, California if Discharged

On July 8, 2025, the government contacted the U.S. Marshals Service, Court Operations, who informed them that if detained, defendant would initially return to White Memorial Hospital, and if defendant is discharged from White Memorial Hospital, that defendant would be admitted to United Health, a skilled nursing facility in Pacoima, California. Pacoima, California is within the Central District of California.

### III. ARGUMENT

### A. The Court Properly Held That the Government Was Entitled to A Detention Hearing

The Court rejected RANDALL's argument at his initial appearance that the government was not entitled to a detention hearing.

5

Although RANDALL argues that he proposes new information to trigger a hearing -- the additional $40,000 unsecured bond and additional medical information -- he does not propose new information as to why the government is not entitled to a detention hearing. Instead, defendant cites several cases in addressing risk of flight as to detention, not as to the threshold question as to whether the government is entitled to a detention hearing.

Indeed, the Court correctly found that the government was entitled to a detention hearing and RANDALL offers no new basis for reconsideration. Section 3142(f) mandates that a "judicial officer shall hold a [detention] hearing . . . upon motion of the attorney for the Government" or, in addition to the cases under (f)(2), "upon the judicial officer's own motion." § 3142(f)(2) (emphasis added). The use of the word "shall" implies a mandatory act, "which normally creates an obligation impervious to judicial discretion." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 27 (1998). In other words, the statute's use of the word "shall" requires that the judicial officer hold the detention hearing upon motion of the government without regard to any particular burden of proof. Given that "[t]he decision whether to hold a hearing occurs based on even less information than a decision to detain or release," it follows that the standard to invoke the detention hearing should be much lower. United States v. Singleton, 182 F.3d 7, 12 (D.C. Cir. 1999). "[A] detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish." Id.

"[T]he government or Court need only express their belief" that a valid ground under § 3142(f) exists for a detention hearing.

United States v. White, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018); see also United States v. Powers, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004) (explaining that the standard to trigger a detention hearing occurs when the "United States or the court believes there is a serious risk of flight").

As the government argued in its previous brief and at the initial appearance, there is a serious risk that RANDALL will flee. Despite a significant criminal history, it appears that RANDALL has not been sentenced to more than 36 months in custody. Here, he faces significant prison time, including a decade or more for committing the instant crime while on pre-trial release. See 18 U.S.C. § 3147.

The likelihood of a significant sentence provides RANDALL an incentive to flee. See United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("[c]onsideration of the nature of the offenses charged involves consideration of the penalties"); United States v. Possino, No. CR 13-00048, 2013 WL 1415108, at *4 (C.D. Cal. Apr. 8, 2013) ("The weight of the evidence against [defendant] is strong. Defendant's awareness of a potentially lengthy prison sentence and the perception of a likely conviction constitute powerful motivations to flee."). These factors weigh towards defendant's detention. See United States v. Al-Arian, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) ("the stronger the government's case, especially if the sentence will be severe, the greater a defendant's incentive to flee"). RANDALL has also unverified and unreported financial resources, including millions of dollars in assets purchased using fraud scheme proceeds,that provide additional evidence that he is a serious risk of flight. RANDALL has not provided any new evidence that the government is not entitled to a detention hearing.

## B. The Proposed Additional $40,000 Unsecured Bond and Additional Medical Information Do Not Mitigate Defendant's Significant Danger to the Community

The additional $40,000 unsecured bond proposed by RANDALL does nothing to mitigate his significant danger to the community. See United States v. Rodriguez, 950 F.2d 85, 89 (2d Cir. 1991) (noting a "security bond, cosigned by two financially responsible persons, strict pretrial service agency supervision and restriction of travel" and the "existence of four cosigners and $10,000 cash may assure the appearance of [Defendant] at trial but will not secure the safety of the community") (emphasis added). Even if confined to his home, RANDALL could still perpetrate his fraud schemes with the use of a telephone or computer as evidenced by his prior fraud schemes. Moreover, as alleged in the complaint, RANDALL's modus operandi is to effectuate his criminal conduct through other individuals, including K.J. and his attorney. None of the accounts involved in the Medi-Cal fraud scheme or assets purchased using fraud scheme proceeds are under RANDALL's name. Confining RANDALL to his home would do nothing to deter RANDALL from continuing to perpetrate crimes through other individuals.

The additional medical information also does not mitigate his danger to the community. See, e.g., United States v. Marino, 731 F. Supp. 2d 323, 327 (S.D.N.Y. 2010) (denying release pending trial for 69-year-old defendant with likely atherosclerosis, mild stroke, cardiac rhythm problem, transient ischemic attach, and risk of stroke due to danger and noting BOP is responsive to defendant's situation). RANDALL's current physical condition does not provide an independent basis to release him. To the contrary, on June 26, 2025, the date of

his arrest, agents observed RANDALL walk into the U.S. Probation Office without any assistance from another individual or from a cane, wheelchair, or other ambulatory device. In addition, the week prior to RANDALL's arrest in June 2025, law enforcement observed RANDALL driving his vehicle out of his residence. Even if RANDALL was bedbound, he could continue to carry out massive fraud schemes.

### C. Defendant Has Failed to Make a Due Process Claim, and He Should Not Be Released Under 18 U.S.C. § 3142(i)

The right to counsel is not absolute. The Supreme Court has recognized that the "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." United States v. Gouveia, 467 U.S. 180, 188, (1984).

Here, RANDALL's due process arguments are premature. It appears that RANDALL has not yet been assigned a detention facility for the pendency of this case. Once RANDALL is assigned a facility pending trial, the BOP will provide him access to counsel. After that time, RANDALL can, if needed, raise potential concerns with the BOP, and if needed, the District Judge and government regarding the trial schedule. Further, as noted above, the U.S. Marshals Service, Court Operations, informed the government on July 8, 2025, that if detained, defendant would initially return to White Memorial Hospital, and if defendant is discharged from White Memorial Hospital, that defendant would be admitted to United Health, a skilled nursing facility in Pacoima, California.

RANDALL's arraignment is not until July 17, 2025, and there is no trial date yet. Any temporary release under 18 U.S.C. § 3142(i) would be premature, and RANDALL cannot show that release is necessary

for preparation of his defense or that the BOP cannot accommodate any of his medical conditions.

**IV. CONCLUSION**

    RANDALL's proposal of an additional $40,000 unsecured bond is woefully insufficient to mitigate his risk of flight and demonstrated danger to the community while on pretrial release.  Because RANDALL has failed to meet his burden on his motion for reconsideration, the government respectfully requests that the Court deny defendant's motion.