**F I L E D**
CLERK, U.S. DISTRICT COURT

7/10/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ asi _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>PAUL RICHARD RANDALL,<br><br>          Defendant. | CR 2:25-cr-00576-FMO<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1956(a)(1)(B)(i): Concealment Money Laundering; 18 U.S.C. § 3147: Commission of Offense While on Release; 18 U.S.C. § 982: Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1349, 3147]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

Defendant and Relevant Individuals and Entities

1.  Defendant PAUL RICHARD RANDALL was a patient marketer from Orange, California, who purported to work for Company 1.

2.  Company 1 was a California corporation purportedly owned by a person ("Individual 1") who worked with defendant RANDALL.

3.   Defendant RANDALL controlled SoCal Family Irrevocable Trust ("SoCal Trust"), a trust established for defendant RANDALL's benefit. SoCal Trust held accounts at Wells Fargo Bank, Bank of America, and Wells Fargo Advisors on which another individual ("Individual 2") was the signatory (collectively, the "RANDALL Trust Accounts").  One of the RANDALL Trust Accounts was an account at Wells Fargo Bank ending in x9463 in the name of SoCal Trust (the "SoCal Trust Wells Fargo Account").  Defendant RANDALL directed Individual 2 regarding the distribution of funds from the RANDALL Trust Accounts.

4.   Kyrollos Mekail owned, operated, and was the Pharmacist-in-Charge for MONTE VP LLC d/b/a Monte Vista Pharmacy ("Monte Vista"), a pharmacy located at 9635 Monte Vista Avenue, Suite 202, Montclair, California 91763.  Mekail controlled checking accounts in the name of Monte Vista at Wells Fargo Bank, including an account ending in x5190 (the "Monte Vista Wells Fargo Account"), and Bank of America.

5.   Monte Vista submitted claims for reimbursement for prescriptions through PioneerRx software.  PioneerRx used servers located outside the state of California to submit claims to Medicaid of California.

6.   Patricia Anderson was a Nurse Practitioner who lived in West Hills, California, and had an office in Calabasas, California. Defendant RANDALL recruited Anderson to work for Company 1 and caused Anderson to be paid for her work for Company 1.

Medi-Cal Program

7.   Medicaid of California ("Medi-Cal") was a health care benefit program, affecting commerce, that provided reimbursement for medically necessary health care services for low-income individuals including families with children, seniors, persons with disabilities,

1  individuals in foster care, pregnant women, and low-income

2  individuals with certain diseases such as tuberculosis, breast

3  cancer, or HIV/AIDS.  Funding for Medi-Cal was shared between the

4  federal government and the State of California.  Individuals who

5  qualified for Medi-Cal benefits were referred to as "beneficiaries."

6       8.   Health care providers, including pharmacies, could receive

7  direct reimbursement from Medi-Cal by applying to Medi-Cal and

8  receiving a Medi-Cal provider number.  Medi-Cal reimbursed health

9  care providers for medically necessary treatment and services

10 rendered to Medi-Cal beneficiaries.

11      9.   To obtain payment for services, an enrolled provider, using

12 its unique provider number, submitted claims to Medi-Cal certifying

13 that the information on the claim form was truthful and accurate and

14 that the services provided were reasonable and necessary to the

15 health of the Medi-Cal beneficiary.

16      10.  Medi-Cal was a "health care benefit program," as defined by

17 Title 18, United States Code, Section 24(b), and a "Federal health

18 care program," as defined by Title 42, United States Code, Section

19 1320a-7b(f).

20      11.  Monte Vista was a Medi-Cal provider.

21      <u>Medi-Cal Program's Temporary Prior Authorization Suspension</u>

22      12.  Medi-Cal at times required that providers obtain "prior

23 authorization" before providing certain health care services or

24 medications as a condition of reimbursement to ensure the health care

25 service or medication was medically necessary and otherwise covered.

26      13.  As a condition of reimbursement, Medi-Cal traditionally

27 required prior authorization for an array of medications, including

28 medications that contained cheap, generic ingredients but were

manufactured in unique dosages, combinations, or package quantities, and were not included in the applicable maximum price lists that capped Medi-Cal reimbursements ("non-contracted, generic drugs"). However, Medi-Cal temporarily suspended prior authorization requirements for most prescription medications at the beginning of 2022 in connection with an ongoing transition of Medi-Cal's prescription drug program from managed care to fee-for-service, referred to as "Medi-Cal Rx."  In or around February 2022, Medi-Cal notified providers of the change in prior authorization requirements, which was made retroactive to in or around January 2022.

B.    OBJECT OF THE CONSPIRACY

14.    Beginning in or around May 2022, and continuing through at least in or around April 2023, in Los Angeles, San Bernardino, and Orange Counties, within the Central District of California, and elsewhere, defendant RANDALL knowingly conspired with Mekail, Anderson, and others known and unknown to the Grand Jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

C.    MANNER AND MEANS OF THE CONSPIRACY

15.    The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

a.    Defendant RANDALL, through Company 1, paid illegal kickbacks and bribes to patient marketers in exchange for the marketers providing defendant RANDALL with names and personal identifying information for Medi-Cal beneficiaries.

b.    Following Medi-Cal's suspension of prior authorization requirements in February 2022, defendant RANDALL and Mekail agreed that defendant RANDALL would refer prescriptions for certain

4

expensive, non-contracted, generic drugs (the "Fraud Scheme Medications") to Monte Vista so that Monte Vista could submit claims to Medi-Cal for the Fraud Scheme Medications.  The Fraud Scheme Medications included: Chlorzoxazone 375 mg tablet; Crotan 10% lotion; DermacinRx Lidogel 2.8% gel; Diclofenac 2% solution pump; Fenoprofen 400 mg capsule; Folite tablet; Indocin 50 mg suppository; Lidocaine-Prilocaine 2.5%-2.5% cream; Lidocort 3%-0.5% cream; Lidotral 3.88% cream; Lofena 25 mg tablet; Meloxicam 5 mg capsule; Naftifine HCL 1% cream; Naproxen-Esomeprazole DR 375-20 mg tablet; Norgesic Forte 50-770-60 mg tablet; Omeprazole-Sodium Bicarbonate 20-1,680 packet; Oxiconazole Nitrate 1% cream; Synoflex 4%-5% patch, and DermacinRx Prenatrix Caplet.

c.    Through the payment of illegal kickbacks and bribes to marketers, defendant RANDALL would obtain patient lists for Company 1 to refer to Monte Vista to bill Medi-Cal for the Fraud Scheme Medications.

d.    Defendant RANDALL would offer and pay illegal kickbacks and bribes to Anderson to work for Company 1 and sign prescriptions for the Fraud Scheme Medications.  To conceal the nature of his kickback arrangement with Anderson, defendant RANDALL caused Anderson to enter into sham contracts and agreements, including a contract dated June 1, 2022, which stated that purported Company 1 would pay Anderson a monthly fee of $25,000 in exchange for various clinical duties.  In reality, Anderson was paid illegal kickbacks and bribes for signing prescriptions for the Fraud Scheme Medications and not the purported clinical duties described in the contract.  In reality, Anderson did not perform any of the clinical

1   duties set forth in the contract other than signing prescriptions for
2   the Fraud Scheme Medications.

3          e.   Defendant RANDALL and others working for Company 1
4   would provide Anderson with pre-filled prescriptions for the Fraud
5   Scheme Medications with the names and personal identifying
6   information of Medi-Cal beneficiaries.  From Anderson's office and in
7   exchange for kickbacks from defendant RANDALL, Anderson would sign
8   the prescriptions for the Fraud Scheme Medications for those Medi-Cal
9   beneficiaries without Anderson ever meeting the beneficiaries,
10  reviewing the beneficiaries' medical records, or otherwise
11  determining that the drugs prescribed were medically necessary.

12         f.   Anderson would then send or cause others at Company 1
13  to send the prescriptions for the Medi-Cal beneficiaries to Monte
14  Vista.  Defendant RANDALL knew that the prescriptions that Company 1
15  referred to Monte Vista for the Fraud Scheme Medications were
16  medically unnecessary and were procured through the payment of
17  illegal kickbacks and bribes.

18         g.   Monte Vista would then submit false and fraudulent
19  claims to Medi-Cal for purportedly dispensing the Fraud Scheme
20  Medications.

21         h.   In return for providing Monte Vista with the
22  prescriptions for the Fraud Scheme Medications, defendant RANDALL
23  would receive an illegal kickback and bribe in the form of a portion
24  of Medi-Cal's reimbursements to Monte Vista for the Fraud Scheme
25  Medications referred by RANDALL.  At times, defendant RANDALL's
26  payments would equal approximately 40 percent of Monte Vista's profit
27  from the fraudulent claims associated with prescriptions defendant
28  RANDALL referred.

1          i.    Defendant RANDALL would conceal and disguise the

2    scheme, including by receiving the payments in the form of checks

3    issued by Monte Vista and payable to the RANDALL Trust Accounts,

4    often with false check memo lines suggesting the payments were for

5    "consulting service[s]" at defendant RANDALL's direction, so as to

6    disguise the nature, ownership, and control of the kickback payments.

7    Between approximately May 16, 2022, and November 14, 2023, Mekail and

8    his family members paid defendant RANDALL at least approximately

9    $32 million in fraud scheme proceeds.

10          j.    Defendant RANDALL in turn would use the fraud scheme

11    proceeds to help purchase items such as sports memorabilia, jewelry,

12    and real property.  Defendant RANDALL would also use the fraud scheme

13    proceeds to pay and cause to be paid kickbacks to Anderson in return

14    for the Fraud Scheme Medication prescriptions Anderson signed.

15    Defendant RANDALL paid and caused to be paid the kickbacks to

16    Anderson through payments from Individual 1 and others in the form of

17    checks, wire transfers, and digital money transfers from the RANDALL

18    Trust Accounts, accounts held by Individual 1, or accounts held by

19    Individual 1's law firm to a bank account controlled by Anderson.  In

20    total, defendant RANDALL would pay and cause to be paid Anderson

21    approximately $285,500 in illegal kickbacks and bribes.  Defendant

22    RANDALL knew that it was illegal to pay kickback payments to a

23    medical provider in exchange for prescribing medications to be

24    reimbursed by Medi-Cal, a federal health care program.

25          k.    Defendant RANDALL would transfer and cause the

26    transfer of the Medi-Cal fraud scheme proceeds to accounts held by

27    Individual 1 and others in order to conceal the nature, location,

28

source ownership, and control of the fraudulently obtained proceeds, as well as to pay kickbacks to Anderson.

16. Pursuant to the conspiracy, from in or around May 2022 to in or around April 2023, defendant RANDALL, along with Mekail, Anderson, and others known and unknown to the Grand Jury, through interstate wire transmissions, submitted and caused to be submitted at least approximately $269,130,829 in false and fraudulent claims to Medi-Cal for purportedly dispensing the Fraud Scheme Medications, on which claims Medi-Cal paid at least approximately $178,746,556.

17. Defendant RANDALL committed this offense while released under Title 18, United States Code, Chapter 207, in United States v. Paul Richard Randall, No. CR 20-00031-GW.

COUNTS TWO AND THREE

[18 U.S.C. §§ 1343, 2, 3147]

18.  The Grand Jury realleges paragraphs 1 through 13 and 15 through 16 of this Indictment here.

A.  THE SCHEME TO DEFRAUD

19.  Beginning in or around May 2022, and continuing through at least in or around April 2023, in Los Angeles, San Bernardino, and Orange Counties, within the Central District of California, and elsewhere, defendant RANDALL, together with Mekail, Anderson, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Medi-Cal and to obtain money and property from Medi-Cal by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

20.  The fraudulent scheme operated, in substance, as described in paragraph 15 of this Indictment.

B.  USE OF THE WIRES

21.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendant RANDALL, together with Mekail, Anderson, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communications in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|-------|------|------------------------------|
| TWO | 10/11/2022 | Submission of claim number 51250479201 in the approximate amount of $13,424.45 for Meloxicam 5 mg capsule for beneficiary K.R. from Monte Vista in California to Medi-Cal via a PioneerRx server outside the state of California. |
| THREE | 10/13/2022 | Submission of claim number 51374695801 in the approximate amount of $8,371.31 for Lofena 25 mg tablet for beneficiary K.R. from Monte Vista in California to Medi-Cal via a PioneerRx server outside the state of California. |

22.  Defendant RANDALL committed these offenses while released under Title 18, United States Code, Chapter 207, in United States v. Paul Richard Randall, No. CR 20-00031-GW.

COUNTS FOUR THROUGH SIX

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2, 3147]

23.  The Grand Jury realleges paragraphs 1 through 13, 15 through 16, and 21 of this Indictment here.

24.  On or about the dates set for below, in Orange County, within the Central District of California, and elsewhere, defendant RANDALL, together with others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly conducted, and willfully caused others to conduct, the following financial transactions affecting interstate commerce, involving the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that property involved in such financial transactions represented the proceeds of some form of unlawful activity and knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| FOUR | 11/29/2022 | Transfer of approximately $1,124,516.56 from the Monte Vista Wells Fargo Account by means of check #1041 with the memo line "consulting service" into the SoCal Trust Wells Fargo Account |
| FIVE | 11/30/2022 | Transfer of approximately $1,345,456 from the Monte Vista Wells Fargo Account by means of check #1028 with the memo line "consulting service" into the SoCal Trust Wells Fargo Account |
| SIX | 12/5/2022 | Transfer of approximately $1,348,174.35 from the Monte Vista Wells Fargo Account by means of check #1051 with the memo line "consulting service" into the SoCal Trust Wells Fargo Account |

25.  Defendant RANDALL committed these offenses while released under Title 18, United States Code, Chapter 207, in <u>United States v. Paul Richard Randall</u>, No. CR 20-00031-GW.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Three of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction, including but not limited to:

(i) The real property located at 25076 Acacia Lane, #83, Laguna Hills CA 92653, APN: 933-89-083;

(ii) The real property located at 23 Opera Ln., Aliso Viejo, CA 92656, APN:930-656-67;

(iii) The real property located at 4682 Warner Ave., #B304, Huntington Beach CA 92649, APN:939-540-58;

(iv) The real property located at 379 23rd Street, Newport Beach CA 92660, APN:426-091-58;

(v) The real property located at 400 W. Ocean, #2103, Long Beach CA 90802, APN:7278-004-117;

(vi) The real property located at 131 Montara Drive, Aliso Viejo, CA 92656, APN:934-507-65; and

(vii) The real property located at 7418 E. Grovewood Ave, Orange, CA 92869, APN:093-270-63; and

//

13

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1 | FORFEITURE ALLEGATION TWO

2 | [18 U.S.C. § 982]

3 |    1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4 | Procedure, notice is hereby given that the United States will seek

5 | forfeiture as part of any sentence, pursuant to Title 18, United

6 | States Code, Section 982(a)(1), in the event of the defendant's

7 | conviction of the offenses set forth in any of Counts Four through

8 | Six of this Indictment.

9 |    2.   The defendant, if so convicted, shall forfeit to the United

10 | States of America the following:

11 |     b.   Any property, real or personal, involved in such

12 | offense, and any property traceable to such property, including but

13 | not limited to:

14 |     (i)  The real property located at 25076 Acacia Lane,

15 | #83, Laguna Hills CA 92653, APN: 933-89-083;

16 |     (ii) The real property located at 23 Opera Ln., Aliso

17 | Viejo, CA 92656, APN:930-656-67;

18 |     (iii)    The real property located at 4682 Warner

19 | Ave., #B304, Huntington Beach CA 92649, APN:939-540-58;

20 |     (iv) The real property located at 379 23rd Street,

21 | Newport Beach CA 92660, APN:426-091-58;

22 |     (v)  The real property located at 400 W. Ocean, #2103,

23 | Long Beach CA 90802, APN:7278-004-117;

24 |     (vi) The real property located at 131 Montara Drive,

25 | Aliso Viejo, CA 92656, APN:934-507-65; and

26 |     (vii)    The real property located at 7418 E.

27 | Grovewood Ave, Orange, CA 92869, APN:093-270-63; and

28 | //

15

1           (b)   To the extent such property is not available for

2      forfeiture, a sum of money equal to the total value of the property

3      described in subparagraph (a).

4           3.   Pursuant to Title 21, United States Code, Section 853(p), as

5      incorporated by Title 18, United States Code, Section 982(b)(1), and

6      Title 18, United States Code, Section 982(b)(2), the defendant, if so

7      convicted, shall forfeit substitute property, if, by any act or

8      omission of the defendant, the property described in the preceding

9      paragraph, or any portion thereof: (a) cannot be located upon the

10     exercise of due diligence; (b) has been transferred, sold to, or

11     deposited with a third party; (c) has been placed beyond the

12     jurisdiction of the court; (d) has been substantially diminished in

13     value; or (e) has been commingled with other property that cannot be

14     divided without difficulty. Substitution of assets shall not be

15     ordered, however, where the convicted defendant acted merely as an

16     intermediary who handled but did not retain the property in the

17     course of the money laundering offense unless the defendant, in

18     committing the offense or offenses giving rise to the forfeiture,

19     //

20     //

21

22

23

24

25

26

27

28

1  conducted three or more separate transactions involving a total of

2  $100,000.00 or more in any twelve-month period.

3

4                                              A TRUE BILL

5

6                                              /S/
                                               _____
7                                              Foreperson

8  BILAL A. ESSAYLI
   United States Attorney
9

10  *Christina Shay*

11  CHRISTINA T. SHAY
    Assistant United States Attorney
    Chief, Criminal Division
12

13  KRISTEN A. WILLIAMS
    Assistant United States Attorney
    Chief, Major Frauds Section
14

15  ROGER A. HSIEH
    Assistant United States Attorney
    Deputy Chief, Major Frauds Section
16

17  LORINDA LARYEA
    Acting Chief, Fraud Section
    United States Department of Justice
18

19  NIALL M. O'DONNELL
    Assistant Chief, Fraud Section
    United States Department of Justice
20

21  SIOBHAN M. NAMAZI
    Trial Attorney, Fraud Section
    United States Department of Justice
22

23

24

25

26

27

28

                                    17