TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
ROGER A. HSIEH (Cal. Bar No. 294195)
Assistant United States Attorney
Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0600
    Facsimile: (213) 894-6265
    E-mail: Roger.Hsieh@usdoj.gov

SIOBHAN M. NAMAZI
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
    300 N. Los Angeles Street, Suite 2001
    Los Angeles, California 90012
    Telephone: (202) 839-2589
    Facsimile: (202) 428-6950
    E-mail:  Siobhan.Namazi@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00576-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT PAUL RICHARD RANDALL |
| v. | |
| PAUL RICHARD RANDALL, | Hearing Date: August 3, 2026<br>Hearing Time: 3:00 p.m.<br>Location:    Courtroom of Hon.<br>    Mark C. Scarsi (7C) |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California, Assistant United States Attorney Roger A. Hsieh, and Department of Justice Trial Attorney Siobhan M. Namazi,

hereby submits its sentencing position for defendant PAUL RICHARD RANDALL.

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence and argument as the Court may permit.

Dated: July 20, 2026                    Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

JENNIFER L. WAIER
Chief Assistant United States
Attorney & Chief, Criminal
Division


                                         /s/
ROGER A. HSIEH
Assistant United States Attorney

SIOBHAN M. NAMAZI
Trial Attorney
Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **Table of Contents**

MEMORANDUM OF POINTS AND AUTHORITIES.................................3

I.    INTRODUCTION..................................................3

II.   FACTUAL AND PROCEDURAL BACKGROUND.............................4

      A.    Defendant's Criminal History: Committing Felony Fraud
            Schemes While Under Court Supervision....................4

      B.    Defendant Commits the Instant $270 Million Fraud
            Scheme While Awaiting Sentencing in Another Case.........5

      C.    Procedural History.......................................8

III.  DEFENDANT'S OFFENSE LEVEL.....................................9

      A.    The Presentence Report...................................9

      B.    Defendant's Total Offense Level Results in a
            Guidelines' Range of Life, Which is Capped by the
            Statutory Maximum of 360 Months' Imprisonment...........10

IV.   ARGUMENT.....................................................12

      A.    Defendant Will Continue to Commit Fraud Even When
            Under Court Supervision.................................13

      B.    The 3553(a) Factors Support a Significant Sentence......15

V.    CONCLUSION...................................................16

**Table of Authorities**

**CASES**                                                                  **Page(s)**

United States v. Enriquez,
2021 WL 3772379 (S.D. Cal. Aug. 24, 2021)...........................13

United States v. Montague,
  29 F.3d 317 (7th Cir. 1994) ......................................12

**Statutes**

18 U.S.C. § 1343............................................... 8, 13
18 U.S.C. § 1956..................................................11
18 U.S.C. § 1962(c)............................................... 4
18 U.S.C. § 3147.............................................. 8, 13
18 U.S.C. § 3553(a)....................................... 12, 15, 16
42 U.S.C. § 408(a)............................................... 4

**Other Authorities**

1984 U.S.C.C.A.N. 3182...........................................16

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

Defendant PAUL RICHARD RANDALL ("defendant") was the architect of a health care fraud and illegal kickback scheme that submitted nearly $270 million in fraudulent claims to Medi-caid of California ("Medi-Cal") for medically unnecessary prescriptions.  Defendant orchestrated the instant fraud scheme while awaiting sentencing in a second federal case involving a separate health care fraud kickback scheme and tax evasion.  Yet, defendant's current conduct is not the first time he facilitated a fraud scheme while facing federal charges.  While awaiting sentencing in a third health care fraud scheme, defendant had his bail revoked and was detained for forging his lawyer's signature to avoid taxes from the second health care fraud scheme.

Defendant has engaged in fraud for more than 30 years at both the state and federal levels, and he has engaged in more sophisticated fraud schemes as he ages.  In his mid-60s, defendant led the instant scheme to defraud the neediest residents of California out of more than a quarter-billion dollars.  Prior felony convictions, prison sentences, and court supervision have not deterred defendant from committing crimes.  For the reasons set forth below, the government respectfully requests that this Court impose a sentence of 20 years' imprisonment on the wire fraud count, and, under its discretion, a sentence of up to 10 years' imprisonment to run consecutively pursuant to defendant's conviction under 18 U.S.C § 3147, three years' supervised release, order restitution for $178,746,556.22, order a $100 special assessment, and enter forfeiture orders consistent with defendant's plea agreement.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

> **A.   Defendant's Criminal History: Committing Felony Fraud**
>
> **Schemes While Under Court Supervision**

In August 1992 defendant was arrested and later convicted for false impersonation and sentenced to 180 days in jail.  (PSR ¶ 89.) Later in 1992, defendant was arrested on a federal charge for false use of a social security number in violation of 42 U.S.C. § 408(a), and he received a 21-month custodial sentence.  (PSR ¶ 98.) Defendant was convicted in 1993 for racketeering in violation of 18 U.S.C. § 1962(c) for conducting a fraudulent scheme with purportedly legitimate companies that defrauded victims out of hundreds of thousands of dollars.  (PSR ¶ 91.)  In 1995, defendant was sentenced to 18 months in custody for felony grand theft in violation of California Penal Code 484/487.1.  (PSR ¶ 92.)

In 2012, defendant was convicted of conspiracy to commit mail fraud for paying illegal kickbacks to obtain referrals of workers' compensation patients to Tri-City for spinal surgeries and paying a kickback of $15,000 to $20,000 per spinal surgery in this District. (PSR ¶ 93; see also United States v. Paul Randall, 8:12-cr-0023-JLS, Dkt. 4.)  Defendant created a company called Platinum Medical and paid kickbacks to physicians for referring workers' compensation patients for toxicology tests.  (PSR ¶ 93.)  While on release awaiting sentencing for paying illegal kickbacks, defendant started another kickback arrangement with the owners of Studio Pharmacy and received 50% of net reimbursements on claims that Studio Pharmacy would submit to insurers based on prescriptions that defendant referred.  United States v. Paul Randall, 2:20-cr-0031-GW (Dkt. 37 at 21-22.)  As part of the separate kickback scheme, defendant directed

the owners of Studio Pharmacy to pay compensation in the form of checks payable to defendant's nominees, including defendant's own lawyer. (Id. at 22.) Defendant then fraudulently, without the knowledge of his lawyer, caused the endorsement of his lawyer's name on the checks to avoid income taxes. (Id.) In 2017, defendant was sentenced to 15 months in custody and a three-year term of supervised release. (Dkt. 126.)

While on supervised release for his 2012 conviction, defendant committed tax fraud in this District through a prescription referral business, as noted above, and was later charged with tax evasion. United States v. Paul Randall, 2:20-cr-0031-GW. Despite his prior conviction for illegal kickbacks for health care referrals, defendant agreed to refer patients to providers in exchange for providers' writing prescriptions for "expensive and medically unnecessary compound drugs." (Id., Dkt. 37.) Defendant received 50% of the net reimbursements on claims submitted to insurers based on prescriptions defendant would refer. Defendant avoided reporting more than $1.8 million in income from 2015 to 2017. (Id. at 24.) Defendant evaded federal taxes by using the social security number of another person without their permission and directed payments to defendant's nominees. Defendant pleaded guilty in April 2022 (id., Dkt. 39), and he was sentenced to 23 months in custody in April 2023 (id., Dkt. 84).

**B.    Defendant Commits the Instant $270 Million Fraud Scheme While Awaiting Sentencing in Another Case**

Having had his bail revoked in 2017 for violating his release conditions while awaiting sentencing in a health care kickback case did not deter defendant from committing crimes while awaiting

5

sentencing.  Defendant again flouted the terms of his release by engaging in the instant conduct while awaiting sentencing.  Around the time defendant pleaded guilty in April 2022, he orchestrated the instant $270 million scheme from May 2022 through April 2023.  (Dkt. 54 ("Plea Agreement" or "Plea") ¶ 13; PSR ¶ 26.)  This time, defendant targeted Medi-Cal, a program designed for the indigent and those with certain disabilities, by causing the submission of fraudulent prescriptions to Medi-Cal.  (PSR ¶ 19.)

Defendant organized and led this fraudulent scheme.  Defendant understood that during a limited window when Medi-Cal suspended prior authorization, he could cause the submission of unique quantities of non-contracted, generic drugs (the "Fraud Scheme Medications").  (PSR ¶¶ 26-27.)  Defendant identified the Fraud Scheme Medications to submit to Medi-Cal during the suspension of prior authorization for the high reimbursement rates.  (PSR ¶ 28.)

With his extensive knowledge and experience with health care fraud, defendant approached, recruited, and supervised multiple co-schemers, including:

- Patient Marketers: provided defendant Medi-Cal beneficiary information in exchange for defendant's illegal kickbacks. (PSR ¶ 37.)

- Christina Hernandez: created prescriptions for the Fraud Scheme Medications with the personal identifying information of Medi-Cal beneficiaries from patient marketers and then send them to Patricia Anderson.  (PSR ¶ 35; see also United States v. Hernandez, 2:26-mj-03520, Dkt. 1 (Complaint).)

- Patricia Anderson: a nurse practitioner that defendant recruited and paid illegal kickbacks in exchange for Anderson

6

signing prescriptions for the Fraud Scheme Medications to submit through Monte Vista without Anderson ever seeing the patients. (PSR ¶¶ 32, 34-35.)

- Kyrollos Mekail: a pharmacist and the owner of Monte Vista Pharmacy. Defendant would cause the fraudulent claims to be submitted to Medi-Cal through Mekail and Monte Vista. (PSR ¶ 28.) In exchange for referring fraudulent Medi-Cal prescriptions to Monte Vista, defendant would receive about 40% of Monte Vista's profits in kickbacks. (PSR ¶ 71.)
- Defendant's Attorney: an individual that assisted defendant with laundering the fraudulent proceeds by receiving the kickback payments from Monte Vista. (PSR ¶¶ 32-33.)
- Signatory of SoCal Family Irrevocable Trust Accounts (the "Randall Trust Accounts"): an individual that assisted defendant with distribution of funds from the Randall Trust Accounts, including by making kickback payments to Anderson. (PSR ¶¶ 23, 32, see also Dkt. 1 ¶ 75.)

Because defendant knew it was illegal to receive kickbacks for patient referrals, defendant directed Mekail to falsely label checks as "consulting services" to disguise the nature, ownership, and control of the fraud proceeds. (PSR ¶ 30.) The size of the scheme was massive. In just eleven months, defendant caused the submission of nearly $270 million in fraudulent claims to Medi-Cal for which Medi-Cal paid more than $178 million. (PSR ¶ 40.) Defendant received at least $32 million in fraud proceeds for leading this scheme, which defendant used to pay kickbacks to Anderson to induce Anderson to write prescriptions for the Fraud Scheme Medications, as

7

well as to pay kickbacks to patient marketers in exchange for Medi-Cal beneficiary information.  (PSR ¶¶ 29, 32, 37.)

Defendant also used the fraud scheme proceeds to purchase luxury vehicles and sports memorabilia.  (PSR ¶ 8, Dkt. 54 at 16.)

**C.    Procedural History**

Defendant was charged by complaint on June 17, 2025, with health care fraud.  (Dkt. 1.)  Magistrate Judge Brianna Mircheff ordered defendant detained at his June 26, 2025, initial appearance.  (Dkt. 9.)  Defendant moved for reconsideration of the detention order, making additional arguments about his health conditions.  (See Dkt. 17.)  The government opposed the reconsideration request (dkt. 20), and after a hearing (dkt. 26), Magistrate Judge Mircheff denied defendant's motion for reconsideration in a written order (dkt. 21).  In her order, Magistrate Judge Mircheff responded to the argument that defendant's health conditions and ties to the community made flight unthinkable:

- The fact is, for most federal defendants, pulling off multi-million-dollar frauds—twice—while under the supervision of Pretrial Services and awaiting sentencing would be unthinkable too.  The hubris involved in Mr. Randall's earlier decisions shape the Court's view about what is unthinkable at this juncture.  (Dkt. 21 at 3.)

- While the Court now has a better picture of the health conditions than it did at the first hearing, and has a greater appreciation of their severity, it does not change the Court's view that Mr. Randall poses a serious risk of committing fraud if he were released on bond.  (Id.)

On July 10, 2025, a grand jury returned an indictment charging defendant with the following offenses, all committed while on release under 18 U.S.C. § 3147: conspiracy to commit wire fraud (18 U.S.C. § 1349), wire fraud (18 U.S.C. § 1343), and concealment money laundering (18 U.S.C. § 1956(a)(1)(B)(i)).  (Dkt. 31.)  Defendant

8

signed a plea agreement without a cooperation provision, and the parties filed the plea agreement on February 17, 2026. (Dkt. 54.) On April 6, 2026, defendant pleaded guilty to count two of the indictment, which charged defendant with wire fraud committed while on release. (Dkt. 64.)

**III. DEFENDANT'S OFFENSE LEVEL**

**A. The Presentence Report**

The United States Probation & Pretrial Services Office issued a PSR for defendant on June 29, 2026. (Dkt. 68.) The PSR calculated a total offense level of 43 and a Criminal History Category of III, resulting in an advisory guidelines' range of life imprisonment, which is capped by the statutory maximum sentence of 360 months. This results in a guidelines' term of imprisonment of 360 months. (PSR ¶ 136.) The PSR calculated the following:

| | | |
|---|---|---|
| Base Offense Level: | 7 | § 2B1.1(a)(2) (PSR ¶ 53) |
| Intended Loss More Than $250,000,000: | +28 | § 2B1.1(b)(1)(O) (PSR ¶ 56) |
| Federal Health Care Fraud Offense > $20,000,000: | +4 | § 2B1.1(b)(7)(B)(iii) (PSR ¶ 61) |
| Sophisticated Means: | +2 | § 2B1.1(b)(10)(C) (PSR ¶ 64) |
| Aggravating Role: | +2 | § 3B1.1(c) (PSR ¶ 64) |
| Obstruction of Justice: | +3 | § 3C1.3 (PSR ¶ 77) |
| Acceptance of Responsibility: | -3 | § 3E1.1 (PSR ¶¶ 80-81) |
| PSR Total Offense Level: | 43 | (PSR ¶ 83) |

The government generally concurs with the calculations in the PSR, with the exception that the enhancement under aggravating role should

be +4 under § 3B1.1(a) rather than +2 under § 3B1.1(c), for a total offense level of 45.[1]

### B. Defendant's Total Offense Level Results in a Guidelines' Range of Life, Which is Capped by the Statutory Maximum of 360 Months' Imprisonment

Except for an aggravating role enhancement (and substituting a sophisticated means enhancement for the money laundering enhancement), defendant agreed in his plea to the calculations in the PSR.  (See Dkt. 54 at 18.)  Defendant's factual basis supports: (1) a base offense level of 7, for pleading guilty to a crime with a statutory maximum of 20 years or more; (2) +28 for causing an intended loss of more than $250 million, given defendant's admission that he caused the submission of "approximately $269,130,829.41 in false and fraudulent claims to Medi-Cal" (Dkt. 54 at 17); (3) +4 for a federal health care fraud offense greater than $20 million, because Medi-Cal was a "Federal health care program" (Dkt. 54 at 11); and (4) +3 for a commission of offense while on release, as defendant admitted (Dkt. 54 at 17).

Between the PSR and defendant's plea agreement, the only enhancements that require further analysis are (1) sophisticated means; and (2) aggravating role.

First, an additional +2 applies for sophisticated means under § 2B1.1(b)(10)(C) as found in the PSR.  (PSR ¶ 64.)  Sophisticated means includes "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense . . . Conduct such as hiding assets or transactions, or both, through the

---

[1] If the government files a public or under-seal supplement prior to sentencing, the government anticipates that defendant's guidelines' range will still be 360 months' imprisonment.

use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means." Application Note 9(B). Here, as noted in the factual basis and PSR, defendant concealed and disguised Medi-Cal reimbursements to Monte Vista by receiving payments in the form of checks payable to the Randall Trust Accounts, often falsely labeling the check memo lines as "consulting services" at defendant's direction.

Second, defendant was the organizer and leader of a criminal activity involving five or more participants, and as such, a four-level enhancement properly applies under U.S.S.G. § 3B1.1(a). Here, defendant was an organizer and leader of criminal activity that included (1) himself; (2) Christina Hernandez; (3) Patricia Anderson; (4) Kyrollos Mekail; (5) his lawyer; (6) multiple patient marketers, and (7) the signatory on the Randall Trust Accounts. Randall was an organizer and leader as evidenced by him: identifying the Fraud Scheme Medications (PSR ¶ 28), approaching Mekail at Monte Vista and recruiting Mekail (id.), directing the concealment of the scheme by having payments falsely listed as "consulting services" (PSR ¶ 30), causing the Randall Trust Accounts to pay kickbacks to Anderson to induce the signing of fraudulent prescriptions (PSR ¶ 32), using his attorney's bank accounts to further conceal the funds (PSR ¶ 33), providing Anderson with pre-filled prescriptions (PSR ¶ 35), and paying kickbacks to patient marketers to get Medi-Cal beneficiary information (PSR ¶ 37).

As noted in § 3B1.1 Application Note 1, a participant need not have been convicted of the crime to be considered a participant. Nonetheless, multiple participants have been convicted or charged in separate cases. See also United States v. Montague, 29 F.3d 317,

11

323-24 (7th Cir. 1994) (affirming application of four-point adjustment under U.S.S.G. § 3B1.1(a) citing introductory commentary that "determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct)").

Given the massive scope of defendant's fraud and his offense level, the addition of two levels does not change defendant's guidelines.  Whether defendant's offense level is 43 as calculated in the PSR or 45, his guidelines' range is life and capped at the statutory maximum of 360 months' imprisonment under USSG § 5G1.1(a).

**IV.   ARGUMENT**

The government recommends that the Court sentence defendant to 20 years' imprisonment, with the discretion to sentence defendant to up to 10 years' imprisonment to run consecutively pursuant to defendant's conviction under 18 U.S.C § 3147, three years' supervised release, order restitution for $178,746,556.22, order a $100 special assessment, and enter forfeiture orders consistent with defendant's plea agreement.  Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a) given defendant's inability to stop committing fraud, even after serving custodial sentences and while under Court-ordered supervision.

The statutory maximum sentence for a single violation of 18 U.S.C. § 1343 is 20 year's imprisonment.  Because defendant was charged and pleaded guilty to 18 U.S.C. § 3147, the Court "shall" sentence defendant to a consecutive sentence of imprisonment of up to ten years.  Thus, the total statutory maximum sentence for

12

defendant's violation of 18 U.S.C. §§ 1343, 3147, is 30 years' imprisonment.

### A.    Defendant Will Continue to Commit Fraud Even When Under Court Supervision

As explained above, defendant sustained numerous fraud convictions and started the instant fraud scheme while awaiting sentencing in a federal case involving a separate health care kickback scheme and tax evasion.  Further, this is not the first time defendant committed an offense while under court supervision.  While on supervised release for his 2012 conviction, defendant engaged in another health care kickback scheme.

Defendant's pattern of criminal activity reflects a brazen disregard for the law, and no punishment to date has deterred defendant from repeatedly committing the same type of crime.  A sentence of 20 years' imprisonment, with the potential of up to 10 years' imprisonment to run consecutively, is necessary to prevent defendant from committing health care fraud or paying illegal kickbacks.  See United States v. Enriquez, 2021 WL 3772379 at *8 (S.D. Cal. Aug. 24, 2021) (finding defendant's prior conviction for the same offense suggests defendant is likely to recidivate in context of compassionate release).

Further, defendant has been given many privileges that other defendants facing sentencing before this Court do not have. Defendant "had no hardships during his childhood and was close with his family."  (PSR ¶ 108.)  Defendant graduated high school and then obtained his bachelor's degree with honors from Claremont College. (PSR ¶¶ 121-22.)  Despite being provided a loving family and higher education, defendant spent the much of his adult life committing

13

crimes.  (PSR ¶¶ 88-102.)  Defendant has demonstrated that he will use his skills and intelligence to defraud regardless of prior custodial sentences and Court supervision.

Defendant's age and reported health conditions do not call for a lenient sentence.  Defendant has continually engaged in fraud as he ages: (1) his 1993 convictions for false use of social security numbers and racketeering (PSR  ¶¶ 90-91) around age 33; (2) his 2012 conviction for conspiracy to commit mail fraud as part of the massive Pacific Hospital kickback scheme[2] for which he was sentenced at age 58 (PSR ¶ 93); (3) his 2022 conviction for another health care fraud scheme for which he was sentenced at age 63; and (4) the instant $270 million fraud scheme for which defendant was charged at age 66.

Defendant cultivated connections in the health care industry and developed a broad network of co-schemers as he aged, and defendant conducted his most daring fraud scheme in his 60s, lining his pockets with money intended to help indigent and disabled populations.  He has proven capable of defrauding the government of over $178 million in less than a year.  Prior custodial sentences, supervised release, pre-trial release, and reaching his mid-60s have only made defendant engage in larger fraud schemes rather than slow down.

As for defendant's health, defendant participated in his motion for reconsideration of the detention order from the hospital. Nonetheless, after reviewing more fulsome information about defendant's health, Magistrate Judge Mircheff denied defendant's request and wrote:

---

[2] See https://www.justice.gov/usao-cdca/pr/five-people-including-two-doctors-charged-kickback-schemes-involving-nearly-600-million (describing $580 million health care fraud scheme).

14

> While the Court now has a better picture of the health conditions than it did at the first hearing, and has a greater appreciation of their severity, it does not change the Court's view that Mr. Randall poses a serious risk of committing fraud if he were released on bond.

(Dkt. 21 at 3.)  Further, USSG § 5H1.1 and 5H1.4, which previously set criteria for considering a departure based on age and physical condition, were deleted effective November 1, 2025.  The 3553(a) factors certainly do not call for a significant variance, even accounting for age and health, given defendant's demonstrated inability to follow the law even when under court supervision.

**B.    The 3553(a) Factors Support a Significant Sentence**

The nature and circumstances of the offense support a significant sentence.  See 18 U.S.C. § 3553(a)(1).  Defendant defrauded a Medi-Cal, a public health insurance program that cares for the state's neediest residents, including low-income individuals, families with children, seniors, persons with disabilities, individuals in foster care, pregnant women, and low-income individuals with specific diseases such as tuberculosis, breast cancer, or HIV/AIDS.

A sentence of 20 years' imprisonment, with the potential for up to 10 years' imprisonment to run consecutively, is appropriate to deter others from engaging in similar illegal conduct.  Individuals who are engaged in criminal conduct like defendant make a calculated decision that the risk of being caught and punished is worth the illicit proceeds that they can obtain from federal government benefit programs.  As stated by the drafters of 18 U.S.C. § 3553(a), general deterrence is particularly important for white collar criminals in order to dissuade actors that small fines or low sentences can be dismissed as simply a "cost of doing business."  S. Rep. No. 98-225,

15

at 76 (1983), <u>as reprinted in</u> 1984 U.S.C.C.A.N. 3182, 3259.  A sentence of up to the statutory maximum of 360 months will serve to affect that calculus and cause individuals to decide that the money to be gained from Medicare is not worth the risk of incarceration.

The government recognizes defendant's age and reported health conditions.  As noted above, defendant has engaged in larger fraud schemes as he ages and the Magistrate Judge noted the specific harm that defendant could cause if released, even with his health conditions.  Although defendant's health conditions may cut against the full statutory maximum sentence of 30 years' imprisonment, a significant sentence is warranted given defendant's inability to follow the law.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of 20 years' imprisonment, and under its discretion, a sentence of to up to 10 years' imprisonment to run consecutively, three years' supervised release, an order of restitution for $178,746,556.22, a $100 special assessment, and enter forfeiture orders consistent with defendant's plea agreement.

16